IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANNA LOUISE QUILES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **2:11-cv-3366-AKK** |
| MICHAEL J. ASTRUE, ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Anna Louise Quiles ("Quiles") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Quiles filed her applications for Title II disability insurance benefits and

Title XVI Supplemental Security Income on December 2, 2008, alleging a disability onset date of February 2, 2008, due to chronic asthma. (R. 68-69, 119-124, 145). After the SSA denied her applications on January 22, 2009, Quiles requested a hearing. (R. 70-74, 81-82). At the time of the hearing on July 10, 2010, Quiles was 44 years old, had a high school diploma and a cosmetology license, and past relevant light, skilled work as a cosmetologist, and light, semi-skilled work as a bar tender. (R. 42, 63). Quiles has not engaged in substantial gainful activity since February 2, 2008. (R. 19, 145).

The ALJ denied Quiles's claim on September 29, 2010, which became the final decision of the Commissioner when the Appeals Council refused to grant review on July 18, 2011, (R. 1-6, 14). Quiles then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Quiles had not engaged in substantial gainful activity since her alleged onset date and therefore met Step One. (R. 19). Next, the ALJ acknowledged that Quiles's severe impairments of asthma and hypertension met Step Two. *Id*. The ALJ then proceeded to the next step and found that Quiles did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 23). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Quiles

> has the residual functional capacity [RFC] to perform work consistent with Exhibit 8F, the state agency physical residual functional capacity assessment, with the modifications of:  the ability to lift and carry modified from medium to 20 pounds occasionally and 10 pounds frequently; the ability to stand and walk is modified to 4 hours out of an 8 hour workday; she can sit for 6 of 8 hours; she can change positions from sitting and standing as needed throughout the day; she can do unlimited pushing and pulling, she can frequently climb ramps and stairs, she can never climb ladders, ropes, or scaffolds; she can frequently balance and do occasional stooping; she can frequently perform the remaining posturals; she has no manipulative, visual or

> communication limitations; she must avoid moderate exposure to pulmonary irritants such as fumes, gases, and dust; she must avoid concentrated exposure to extremes of heat and cold; she must avoid unprotected heights; and she experiences mild to moderate pain.
>
> * * * *
>
> As for the opinion evidence, the undersigned gives some weight to the opinion of Dr. Cranford in Exhibit 6F, the food stamp application, in that the doctor noted that the claimant suffered from chronic asthma specifically induced by chemical, environmental and seasonal exposure, but rejects the doctor's opinion that asthma prevents the claimant from working in order for the claimant to be eligible for food stamps. In Exhibit 5F, Dr. Cranford indicated the claimant's asthma was well controlled and she was doing well with her inhaler. The claimant herself testified at the hearing her asthma had improved since she stopped smoking. The undersigned finds that Dr. Cranford's opinion is inconsistent with his own treatment notes and the medical evidence in the record. The medical record fails to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled. . . . Considerable weight is given to the Mental RFC assessment by the state agency psychological consultant whose opinion was consistent with the medical evidence as a whole and this decision. The claimant was never referred to a mental health specialist by her treating physicians and does not require treatment for any mental impairment and has no severe mental impairment.

(R. 25-26). In light of Quiles's RFC, the ALJ determined that Quiles was "unable to perform[ ] any past relevant work" because the "demands of the claimant's past relevant work as a cosmetologist and bartender exceed the [RFC]." (R. 26). Therefore, the ALJ proceeded to Step Five where he considered Quiles's age, education, experience, and RFC, and determined that there are "jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*.

Because the ALJ answered Step Five in the negative, the ALJ determined that Quiles is not disabled. (R. 27); *see also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

Quiles asserts that the ALJ erred because he (1) failed to properly consider Quiles's depression and obesity at Step Two, (2) relied on a state agency opinion that was "superseded by multiple items of evidence," (3) failed to consider Quiles's asthma and hypertension in combination, (4) discounted the treating physician Dr. Ralph Cranford, and (5) failed to develop the record by obtaining a medical source opinion. Doc. 8 at 6-7. For the reasons stated below, the court finds that the ALJ's opinion is supported by substantial evidence.

*A.     The ALJ properly considered Quiles's impairments at Step Two*

At Step Two of the sequential process, the ALJ must determine whether a claimant's impairments are severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii). A disability finding requires "severe" impairments to last for at least twelve consecutive months. *See* 20 C.F.R. §§ 404.1509.

    1.    <u>Depression</u>[1]

        a.    Quiles's Depression is Not a Severe Impairment

The court will review the relevant medical records to determine whether

---

[1] In her disability applications, Quiles listed only asthma as limiting her ability to work.

Quiles is correct that the ALJ failed to properly consider her depression. In that regard, Quiles visited Dr. Christopher Roney at the Pulmonary & Sleep Associates of Alabama, P.C. on September 29, 2006, where Dr. Roney noted that Quiles's past medical history included anxiety/depression and that Quiles was currently taking Prozac. (R. 209). Two months later, on December 7, 2006, Quiles presented again to Dr. Roney for "shortness of breath, cough and wheezing" with "panic and some anxiety." (R. 207). Dr. Roney noted that Quiles's asthma "symptoms are also compounded by anxiety and panic. . . . She is to continue taking her Prozac for depression/anxiety. I feel her other episodes are worsened by panic." (R. 208). These are Dr. Roney's only notes related to Quiles's depression.

Dr. James Cranford, Jr. at Greystone Internal Medicine, P.C. treated Quiles from May 10, 2007, through October 3, 2008. (R. 217-227). The only progress note related to Quiles's depression was on August 20, 2008, where Dr. Cranford reported Quiles was "doing well" and refilled her Prozac. (R. 226).

Quiles was also treated by various physicians at Cooper Green Hospital from March 6, 2009, through June 29, 2009. (R. 283-295). On April 23, 2009, Dr. Jacquline Perry evaluated Quiles and noted that she suffers from asthma and anxiety and prescribed Prozac. (R. 292). On May 22, 2009, during a "routine visit

[with] wheezing and weight gain," Dr. Shirley Jones listed Quiles's diagnoses as asthma, "depression/anxi[ety]/Prozac," hyperlipidemia, and hypertension. (R. 291). Lastly, Quiles's February 17, 2010 progress note states that her past medical history included depression and anxiety.[2] (R. 289).

Based on the court's review of the relevant treatment notes, the ALJ's failure to find that Quiles's depression is a severe impairment is supported by substantial evidence. There are no treatment notes from or referrals to a mental health specialist. The treatment notes that do exist fail to address specifically Quiles's purported depression and, instead, Drs. Roney and Perry state only that Quiles has anxiety secondary to her asthma. Moreover, even assuming Quiles has a valid depression diagnosis, the medical record fails to establish a depression diagnosis for at least twelve consecutive months. Instead, the record contains an anxiety or depression diagnosis in December 2006, August 2008, April 2009, and May 2009, which fail collectively to demonstrate that Quiles's depression is disabling. Significantly, the state agency examiner Dr. Robert Estock reported that Quiles stated that Prozac and Xanax are prescribed for the panic attacks she feels when she has an asthma attack and that "she has never had any mental health issues except as related to her asthma." (R. 242). Therefore, the ALJ's

---

[2]The examining physician's name was not included on the progress note.

determination that Quiles's anxiety/depression diagnosis is not a severe impairment is supported by substantial evidence.

   b. Dr. Estock's Opinion

Without any explanation or supporting evidence, Quiles contends that the ALJ "erred in relying on the state agency medical opinion which was superseded by multiple items of evidence." Doc. 8 at 7. The court disagrees. On January 22, 2009, state agency disability examiner Dr. Robert Estock completed a psychiatric review technique and noted that Quiles has non-severe anxiety-related disorders, is prescribed Prozac and Xanax for "panic [symptoms] when she feels an asthma attack starting," and that Quiles stated that when she "feels an asthma attack coming on she has [a] panic attack-like [symptoms] (fear of not being able to breath). The Prozac and Xanax are prescribed for these reasons. [Plaintiff] states that this is definitely not a mental health issue and that she has never experienced any mental health issues except as related to her asthma." (R. 230, 235, 242). Dr. Estock opined further that Quiles has mild restriction of activities of daily living and difficulties in maintaining social functioning, and no difficulties in maintaining concentration, persistence, or pace and episodes of decompensation. (R. 240). The ALJ gave Dr. Estock's opinion "considerable weight" because it was "consistent with the medical evidence as a whole." (R. 26).

The only evidence related to Quiles's depression/anxiety received after Dr. Estock's assessment are the notes from Cooper Green physicians which, as discussed above, do little to support Quile's contention that her depression is disabling.  Moreover, Drs. Roney and Perry's opinions that Quiles's asthma symptoms exacerbate her anxiety lend support to Dr. Estock's opinion.  In fact, Quiles testified that her asthma attacks cause her anxiety and when Quiles's attorney asked her if she was "a little depressed," she answered, "Well, yes, this is very depressing - - having to come, and having to try and do something like this is - - it's hard."  (R. 50, 56).  In other words, Quiles's answer related only to the hearing and she failed to otherwise expound on her purported depression diagnosis.  Therefore, the ALJ's decision to give Dr. Estock's opinion "considerable weight" is supported by substantial evidence.

    2.    <u>Obesity</u>

The ALJ did not err in failing to find Quiles disabled due to her obesity.  There is no evidence in the record that Quiles's obesity prevents her from performing light work.  In fact, the evidence indicates otherwise since Quiles testified that she can dust, sweep, mop with a Swiffer, drive, cook, "bring [her husband] everything that he needs" because he uses a wheelchair, and maybe bartend in a smoke free environment.  (R. 52, 54, 59).  Therefore, the ALJ did not

err in failing to consider her obesity a severe condition.[3]

B.   *The ALJ considered Quiles's impairments in combination with other impairments*

Quiles contends next that the ALJ erred in failing to "properly consider [her] impairments in combination." Doc. 8 at 8. This argument is unpersuasive. At Step Two of the sequential process, the ALJ found that Quiles's obesity "singly and in combination with other impairments do not cause more than minimal limitation in [Quiles's] ability to perform basic work activities. The undersigned has considered the claimant's obesity in accordance with Social Security Ruling 02-1p." (R. 22). Furthermore, the ALJ also found that Quiles's "depression, anxiety, hyperlipidemia, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." *Id*. At Step Three of the sequential process, the ALJ's finding that Quiles "does not have an impairment or combination of impairments" that meets a listing "evidences [the ALJ's] consideration of the combined effect of [the claimant's] impairments." *Jones v. Dep't of Health and Human Serv.*, 941 F.2d 1529, 1533 (11th Cir. 1991); (R. 23). Finally, at Step Four of the sequential process, the ALJ stated that he "considered *all* symptoms and the extent to which

---

[3]Quiles failed to list obesity as an impairment limiting her ability to work on her disability applications. (R. 145).

these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. 24) (emphasis added). Therefore, Quiles's bald assertion that the ALJ failed to consider her impairments in combination is unfounded. The court finds that the ALJ's opinion is supported by substantial evidence.

C.   *Dr. Cranford*

Quiles contends next that the ALJ erred in discounting Dr. Ralph Cranford's opinion "without first contacting him for clarification of perceived inconsistencies." Doc. 8 at 7. In order to address Quiles's contention, the court will review Dr. Cranford's treatment notes, which begin on May 10, 2007, when Dr. Cranford treated Quiles for "lower back pain, specifically left sciatic component radiating down left leg after a fall" and moving boxes. (R. 218). Dr. Cranford noted that Quiles had an "unremarkable" lumbar spine, intact motor sensory, positive straight leg raises on the left, and 2+ reflexes, and recommended applying ice and heat, prescribed Celebrex, Skelaxin, Darvocet, and administered Toradol "to get her through to work." (R. 218).[4] Dr. Cranford evaluated Quiles again on June 11, 2007, for asthma and reported that her lungs were "clear with

---

[4] Dr. Cranford evaluated Quiles on May 31, 2007, July 13, 2007, November 12, 2007, and December 19, 2007, for conditions unrelated to her disability determination. (R. 219, 222, 224, 225, 227).

minimal expiratory wheezes right and left upper lobes," and advised her to continue her medications. (R. 220). On June 21, 2007, Dr. Cranford noted that Quiles "present[ed] for generalized injuries from [motor vehicle accident]" with "secondary contusion of left orbit on steering wheel and diffuse discomfort in left shoulder, neck, and lower lumbar spine" and that Quiles's "x-rays reveal no abnormality except some decreased disk space C5-6." (R. 221). Dr. Cranford advised Quiles to alternate applying ice and heat, and prescribed Celebrex, Ultram, and Skelaxin. *Id*.

Quiles visited Dr. Cranford again on October 16, 2007, for a reevaluation of her asthma and bronchitis and Dr. Cranford prescribed a trial of Symbicort. (R. 224). When Quiles returned on August 20, 2008, Dr. Cranford reported Quiles "doing well. Using her inhaler, not overusing despite seasonal issues currently in progress." (R. 226). Then on October 30, 2008, Dr. Cranford completed a Food Stamp Program Work Requirements form where he opined that Quiles was not mentally or physically able to work due to her permanent and chronic asthma. (R. 229). The ALJ gave Cranford's opinion that Quiles "suffered from chronic asthma specifically induced by chemical, environmental and seasonal exposure "some weight." (R. 25). However, the ALJ rejected Dr. Cranford's opinion that Quiles asthma prevents her from working because on August 20, 2008, Dr. Cranford

reported Quiles "doing well" and her asthma controlled, and because Quiles testified at the hearing that her asthma had improved since she stopped smoking. (R. 25-26, 45). In light of the fact that Dr. Cranford's opinion that Quiles is unable to work is inconsistent with his opinion that her asthma is controlled, the ALJ's decision to only give Dr. Cranford's opinion "some weight" is supported by substantial evidence. *See* 20 C.F.R. § 404.1527(c)(2) and (4); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

D.   *The ALJ did not err in failing to order a medical source opinion.*

Lastly, the court disagrees with Quiles's assertion that the ALJ erred by failing to "obtain a medical source opinion by consultative examination or medical advisor for the entire period." Doc. 8 at 7. The ALJ is not required to order additional medical opinions when, as here, the record contains sufficient evidence for the ALJ to make a disability determination. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted). Indeed, the ALJ's finding that Quiles has an RFC for light work is consistent with the record as a whole and Quiles's testimony of her daily activities. Ultimately, Quiles must meet her burden of proving that she is disabled. *See* 20 C.F.R. § 416.912(c). Notwithstanding Quiles's unsubstantiated assertions to the contrary, the record evidence simply does not support her disability claim, and she failed to articulate

why additional medical evidence is warranted to evaluate her claim. Therefore, the court finds that the ALJ's decision is supported by substantial evidence.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Quiles is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 19th day of October, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE